

# UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

ENTERED
07/02/2010

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 09-39760-H4-13 |
| STEPHEN BLAKE MULLIN, | § | |
| | § | |
| Debtor. | § | |

---

## MEMORANDUM OPINION ON AMENDED MOTION FOR RELIEF FROM STAY FILED BY BARCLAYS CAPITAL REAL ESTATE INC. DBA HOMEQ SERVICING
[Doc. No. 41]

### I. INTRODUCTION

Just as homesteads in Texas are sacrosanct to Texas homeowners, so may it be said that due on sale clauses are sacrosanct to Texas home lenders. *In re McDaniel*, 70 F.3d 841, 843 (5th Cir. 1995). At least, that is what the lender in the case at bar would have this Court believe. And, there is good reason for any home lender to take this view. The very purpose of a due on sale clause is to prevent the home lender's collateral from falling into the hands of someone other than the borrower whose character and credit history the lender evaluated in making its loan. Given the facts in this case—where that "someone" is the debtor—this Court can understand why due on sale clauses are so important to a home lender. Indeed, this Court writes this Memorandum Opinion to emphasize its holding that due on sale clauses will be enforced even when a bankruptcy petition has been filed because these clauses are a "fundamental aspect of a mortgagee's rights . . ." *In re Tewell*, 355 B.R. 674, 680 (Bankr. E.D. Ill. 2006) (citing *In re Allen*, 300 B.R. 105, 119 (Bankr. D.D.C. 2003)). Specifically, a "due on sale clause function[s] to permit lenders to evaluate the credit history, income, and other characteristics of prospective purchasers of the real estate and to refuse to finance those whose characteristics are unsatisfactory under the lender's loan underwriting criteria . . . it is crucial for the lender to be

able to avoid the increased risk of default that an uncreditworthy purchaser permits." 40 UCLA L. Rev. 851. In effect, the due on sale clause permits the lender to determine "if the proposed grantee of the property lacks the personal and financial qualities that we would find acceptable in a new borrower." *Id.* at 918.

The Court also writes this Opinion to address additional issues of particular importance to the consumer bankruptcy bar, including: (1) whether a Chapter 13 debtor, having secretly taken title to a home lender's collateral and declared this collateral to be his homestead, may obtain confirmation of a plan that has repayment terms different from the terms negotiated between the home lender and the original borrower (*i.e.*, the person who sold the property to the debtor); (2) whether cause exists under 11 U.S.C. 362(d)(1)[1] to lift the stay where a debtor, pre-petition, secretly took title to the home lender's collateral and now proposes in his plan to pay the balance of the note he gave to the lender's borrower, over a sixty month period, even though there is a due on sale clause in the deed of trust held by the lender; (3) if cause does exist to lift the stay, whether the stay should nevertheless be kept in effect because the claimant, who presently holds the note and deed of trust through an assignment, recorded the assignment after the filing of the bankruptcy petition;[2] (4) whether the claimant may recover its reasonable attorneys' fees and costs for drafting and prosecuting the motion to lift stay and objection to the debtor's proposed plan;[3] and (5) if the claimant may recover its fees and costs, whether applicable law allows this

---

[1] Any reference hereinafter to "the Code" refers to the United States Bankruptcy Code. Further, reference to any section (i.e. §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code. Reference to a "Rule" or "Bankruptcy Rule" refers to the Federal Rules of Bankruptcy Procedure.

[2] Stated differently, is the post-petition recordation of the assignment a violation of the automatic stay and, if so, does such a violation justify keeping the stay in place to prevent the claimant from foreclosing its lien on the property now inhabited by the debtor?

[3] Specifically, this issue should be viewed in conjunction with the fact that the claimant purchased a note and deed of trust signed not by the debtor, but by the original borrowers—who thereafter furtively sold the collateral to the debtor.

Court to require the debtor and the initial borrowers—in their personal capacities—to pay the attorneys' fees and costs incurred by the secured claimant in prosecuting the motion to lift stay and objection to the plan, as opposed to simply adding the fees and costs to the indebtedness and recovering these fees and costs only when foreclosure on the collateral occurs or the note and deed of trust are purchased by another assignee?

On June 8, 2010, the Court orally announced its Findings of Fact and Conclusions of Law from the bench. The Court has reduced its Findings of Fact and Conclusions of Law to writing in this Memorandum Opinion. To the extent that any of this Court's oral Findings of Fact and Conclusions of Law conflict with the written Findings of Fact and Conclusions of Law, the latter shall govern and shall be considered amendments of the oral Findings of Fact and Conclusions of Law.

## II. FINDINGS OF FACT

1.  On December 7, 2004, James L. Morgan and Carol L. Morgan (the Morgans) executed that one certain Texas Home Equity Adjustable Rate Note in the original principal amount of $500,000.00 payable to Argent Mortgage Company, LLC (Argent), which was recorded on December 15, 2004 in the official public records of Montgomery County, Texas (the First Lien Note). [Movant's Ex. No. 1].

2.  On December 7, 2004, the Morgans also executed an instrument entitled Texas Home Equity Security Instrument, which was recorded on December 15, 2004 in the official public records of Montgomery County, Texas (the First Lien Deed of Trust). [Movant's Ex. No. 2].

3.  The Morgans executed the First Lien Deed of Trust in order to give a first lien on the certain real property to Argent so that the First Lien Note would be collateralized. Specifically, the Morgans granted a lien on improved real property located at 16909

Butera Road, Magnolia, Texas (the Property).  The First Lien Deed of Trust contains a due on sale clause with respect to the Property.  [Tape Recording, 5/25/2010 Hearing at 11:17:44]. [Movant's Ex. No. 2].

4.    On December 13, 2004, Argent assigned the First Lien Note and the First Lien Deed of Trust to Ameriquest Mortgage Company (Ameriquest). [Movant's Ex. No. 3]. This transaction was evidenced by a document entitled: Assignment of Deed of Trust Document Number 2010041985.  Ameriquest did not record this document.

5.    On the same day that Ameriquest took an assignment of these instruments—which was December 13, 2004—it assigned the First Lien Note and First Lien Deed of Trust to Wells Fargo Bank, N.A. (Wells Fargo).[4] [Movant's Ex. No. 4].  This transaction was evidenced by a document entitled: Assignment of Deed of Trust Document Number 2010041986.  Wells Fargo did not record this document.

6.    Barclays Capital Real Estate Inc. DBA Homeq Servicing (Barclays) is the servicer for Wells Fargo. Therefore, Barclays is responsible for, among other things, collecting payments that are due under the First Lien Note.[5]

7.    After the Morgans executed the First Lien Note and First Lien Deed of Trust, they remitted their monthly payments to Barclays. Eventually, however, the Morgans defaulted under the First Lien Note and were unable to make the monthly payments. Thereafter, they unsuccessfully attempted to restructure the payments under the First Lien Note.  Eventually, the Morgans felt pressure from Barclays to cure the default and

---

[4] Wells Fargo serves as Trustee Under Pooling and Servicing Agreement as of April, 2005 Asset-Backed Pass-Through Certificates Series 2005-WHQ2.

[5] Any reference in this Opinion to Barclays taking action necessarily means that it is taking action on behalf of Wells Fargo.  Further, even though Barclays, the servicer of the loan, is the party who filed the pleadings in this case, this Opinion will frequently refer to Wells Fargo instead of Barclays because it is Wells Fargo who holds the First Lien Note and First Lien Deed of Trust and therefore whose rights under these instruments are affected by the filing of the Debtor's Chapter 13 petition.

became concerned that they would lose the Property through foreclosure. [Tape Recording, 5/25/2010 Hearing at 11:18:24 a.m.].

8.  The Morgans believed that there was substantial equity in the Property, and they did not want to lose the Property in a foreclosure sale.  Therefore, they decided to sell the Property knowing that they could move to another residence that they owned. [Tape Recording, 5/25/2010 Hearing at 11:07:46 a.m.].

9.  On August 20, 2009, the Morgans sold the Property to Steven B. Mullin (Mullin or the Debtor) by executing a warranty deed. [Movant's Ex. No. 7]. The purchase price was $575,000.00, with Mullin putting down $75,000.00 in cash and agreeing to pay the balance in sixty equal monthly installments of $3,850.00, beginning on September 1, 2009, with a balloon payment of to be made on August 7, 2014. [Tape Recording 5/18/2010 Hearing at 9:26:40 a.m.; 9:39:42 a.m.]; [Tape Recording 5/25/2010 Hearing at 1:23:40 p.m.].

10.  On August 20, 2009, to evidence Mullin's obligation of $500,000.00 to the Morgans, Mullin executed and delivered to the Morgans that one certain Real Estate Lien Note in the principal amount of $500,000.00 payable to the Morgans (the Second Lien Note), together with a deed of trust securing the Second Lien Note (the Second Lien Deed of Trust). [Movant's Ex. Nos. 5 & 6].

11.  Neither the Morgans nor Mullin gave notice to Barclays or to Wells Fargo that the Morgans had transferred title of the Property to Mullin. [Tape Recording 5/25/2010 Hearing at 11:19:20 a.m.].

12.  Moreover, neither the Morgans nor Mullin recorded the Second Lien Note or the Second Lien Deed of Trust. [Tape Recording 5/25/2010 Hearing at 11:14:44 a.m.].

13. Barclays—and thereafter Wells Fargo—did not learn about this conveyance until after Mullin filed his Chapter 13 bankruptcy petition. [Tape Recording 5/18/2010 Hearing at 10:13:45].

14. The Morgans used a portion of the $75,000.00 cash payment that they received from Mullin to become current under the terms of the First Lien Note. Specifically, the Morgans made four past due payments to Barclays; therefore, because the monthly payments under the First Lien Note are $3,176.80, the Morgans paid approximately $12,707.20 to Barclays in August of 2009. However, the Morgans used the remaining funds of approximately $62,292.80 to pay other debts that they had incurred, including debts that had accrued from medical care providers. [Tape Recording 5/25/2010 Hearing at 11:11:48 a.m.]. Stated differently, the Morgans used $62,292.80 in proceeds from the sale of Wells Fargo's collateral to pay creditors other than Wells Fargo.

15. After executing the Second Lien Note, Mullin made two payments to the Morgans: check number 117 for $2,198.75 and check number 119 for $2,850.00. However, Mullin has made no payments to the Morgans since September of 2009. [Tape Recording 5/25/2010 Hearing at 11:23:40 a.m.]; [Tape Recording 5/25/2010 Hearing at 11:24:57 a.m.].

16. The Morgans have made no payments to Barclays since August of 2009, when they used approximately $12,707.20 of the $75,000.00 down payment made by Mullin to become current under the First Lien Note. The Morgans had counted on Mullin to make his monthly payment to them of $3,850.00 so that they could make their monthly payment to Barclays of $3,176.80. Once Mullin stopped making payments under the Second Lien Note to the Morgans, the Morgans stopped making payments under the First Lien Note to Barclays. [Tape Recording 5/18/2010 Hearing at 11:11:01 a.m.].

17.   After failing to make payments to the Morgans in October, November, and December of
      2009, Mullin became fearful that the Morgans would foreclose on the Property under the
      Second Lien Deed of Trust. [Tape Recording 5/18/2010 Hearing at 9:40:17 a.m.]. He
      therefore filed a Chapter 13 petition on December 25, 2009. [Doc. No. 1].

18.   On January 13, 2010, Mullin filed his schedules.  His Schedule A reflects that he owns
      the Property. [Doc. No. 18].   His Schedule C represents that the Property is his
      homestead (which he seeks to exempt under Texas law), and the Debtor resides on the
      Property.   His Schedule D represents that he owes the Morgans the sum of $497,000.
      [Doc. No. 18]. His Schedule D also reflects that Barclays services the loan taken out by
      the Morgans.[6] [Doc. No. 18].   Specifically, the Debtor sets forth on his Schedule D that
      "Homeq Servicing [*i.e.*, Barclays] services a mortgage on this property taken out by
      James and Carol Morgan in an unknown amount.  Debtor is not personally liable on this
      mortgage."

19.   Because the Morgans were in default under the First Lien Note, Barclays sent them a
      demand letter, which included language expressly accelerating the entire indebtedness
      owed under the First Lien Note.  Fearful that Barclays would foreclose on the Property,
      the Morgans gave this letter to their attorney, who in turn informed counsel for Barclays
      that Mullin had taken title to the Property in August of 2009 and had thereafter filed a
      Chapter 13 petition to obtain the benefit of the automatic stay.

20.   On January 13, 2010, the Debtor filed his proposed plan (the Plan). [Doc. No. 15].  The
      Plan proposes to pay the Second Lien Note as follows: (a) the arrearage, which is shown
      to be $13,515.00, is to be paid over 58 months, with monthly payments to be made on a

---

[6] In fact, Schedule D identifies an entity called "Homeq Servicing." As already noted in Finding of Fact No. 6, this is the same entity as Barclays.

pro-rata basis; (b) the unpaid balance, which is shown to be $497,000.00, is to be paid over 60 months, in equal monthly installments of $3,850.00. There is no reference in the Plan to the First Lien Note, as the Debtor takes the position that his obligation is to the Morgans (on the Second Lien Note), not Wells Fargo (on the First Lien Note). The Plan has not yet been confirmed.[7] The Plan also sets forth that no property will revest in the Debtor until he has received his discharge. Thus, the Debtor's estate will remain in existence throughout the entire 60-month period for payments under the Plan, which necessarily means that the Property is property of the estate and that the automatic stay remains in effect for this 60-month period, thereby preventing foreclosure on the Property.

21.     On April 20, 2010 Barclays filed an objection to the Plan (the Objection) on the grounds that the Plan prevents Wells Fargo from collecting the obligation owed to it under the First Lien Note and First Lien Deed of Trust because it cannot foreclose. [Doc. No. 43]. Additionally, on April 20, 2010, Barclays filed a motion for relief from stay, which it then amended later in the day (the Motion). [Doc. Nos. 40 & 41]. The Motion requests the Court to lift the stay for cause—so that Barclays can conduct a foreclosure sale on the Property—on the grounds that Mullin (hereinafter referred to as the Debtor) improperly acquired title to the Property through the Morgans' violation of the due on sale provision of the First Lien Note. The Motion requests this Court to grant Barclays *in rem* relief and award attorneys' fees and costs to Barclays. Specifically, Barclays wants to foreclose on the Property (res) to retire the debt.

---

[7] The Court concurs that the Debtor's obligation is to the Morgans under the Second Lien Note because the Debtor never signed the First Lien Note and therefore is not liable to Wells Fargo. Although the Court agrees with the Debtor on this particular point, the Court nevertheless rejects the Debtor's arguments as to why the stay should be kept in place so that foreclosure on the Property continues to be enjoined.

22.   On May 10, 2010, and May 11, 2010, the Debtor filed his initial response and amended response (the Response), respectively, opposing the relief sought by Barclays in the Motion. [Doc. Nos. 44 & 45].

23.   On May 18, 2010, this Court held a hearing on the Motion and the Response. Only one witness, the Debtor, gave testimony on this day. The Court then continued the hearing until May 25, 2010.

24.   On May 18, 2010, counsel for Barclays recorded the assignment of the First Lien Deed of Trust from Argent to Ameriquest and the assignment from Ameriquest to Wells Fargo (the Assignments) in the official public records of Montgomery County, Texas. [Movant's Ex. No. 3 & 4].

25.   On May 22, 2010, the Morgans filed a response to the Motion (the Morgans' Response) setting forth that they do not oppose the lifting of the stay so long as any attorneys' fees awarded to Barclays are not imposed against the Morgans personally. [Doc. No. 57].

26.   On May 24, 2010, the Debtor filed a brief setting forth various legal arguments in support of the Debtor's Response that the Motion should be denied. [Doc. No. 59].

27.   On May 25, 2010, the Court completed the continued hearing on the Motion. One other individual, James L. Morgan (Morgan), gave testimony. As set forth in the Morgans' Response, Morgan testified that his wife and he do not oppose the Motion; rather, they oppose only any attempt by Barclays to convince this Court to require the Morgans, in their individual capacities, to pay any attorneys' fees and costs incurred by Barclays for prosecuting the Motion. [Doc. No. 57].

28.   After listening to testimony, reviewing exhibits, and hearing closing arguments from counsel for each party, the Court took the matter under advisement.

### III. ISSUES IN DISPUTE

In closing arguments, counsel for Barclays, Mullin, and the Morgans made several points. Counsel for Barclays focused on the due on sale clause in the First Lien Deed of Trust.  His argument is: (1) that this provision is enforceable; (2) that, therefore, when the Morgans sold the Property to Mullin without Wells Fargo's consent, the entire balance owed by the Morgans under the First Lien Note became due at the option of Wells Fargo; (3) that because the Morgans have been in default under the First Lien Note for several months, Wells Fargo wants the entire balance immediately paid; (4) that the only way that this goal can be obtained is through foreclosure of the first lien on the Property; (5) that Mullin's taking title to the Property without any consent by Wells Fargo (or its servicer Barclays), and thereafter his filing of a Chapter 13 petition, represents an impermissible attack on the due on sale clause because Wells Fargo is now prohibited from immediately collecting the entire balance due under the First Lien Note due to the stay's prohibition of taking action against property of Mullin's estate; and (6) that the Plan violates §1322(b)(2) because by preventing Wells Fargo from enforcing the due on sale clause (by foreclosing), the Plan modifies the rights Wells Fargo has under the First Lien Deed of Trust. Thus, because Mullin is using the Bankruptcy Code to modify Wells Fargo's rights by circumventing the very purpose of the due on sale clause—which is to prevent Wells Fargo's collateral from falling into the hands of some someone (i.e. Mullin) other than the borrower whose character and credit history Wells Fargo evaluated in making the initial loan (i.e. the Morgans)—Barclays contends that cause exists under § 362(d)(1) to immediately lift the stay so that Barclays may proceed to sell the Property at a foreclosure sale and apply the sale proceeds against the entire balance of the First Lien Note.  Additionally, counsel for Barclays argued that his client is entitled to attorneys' fees and costs for having to prosecute the Motion and the

Objection, which—he contended—would never have been filed if the Morgans had not violated the due on sale clause by secretly selling the Property to Mullin.

Counsel for Mullin argued that the Motion should be denied because Barclays, through its counsel of record, recorded the Assignment after the filing of Mullin's petition, and in so doing, Barclays violated the automatic stay. And, because Barclays violated the automatic stay, counsel for Mullin argued that Barclays has unclean hands and, therefore, its requested relief should therefore be denied. Counsel for Mullin also contended that the Plan's proposed treatment for paying off the Second Lien Note does not modify Wells Fargo's rights under the First Lien Note because as long as Mullin makes his monthly Plan payments to the Chapter 13 trustee, the trustee will remit to the Morgans the amounts owed by Mullin to them under the Second Lien Note—and they will then have sufficient cash to remit payments under the First Lien Note. Counsel for Mullin further asserted that, even if this Court lifts the stay to allow Barclays to foreclose, this Court should nevertheless decline to impose personal liability on Mullin for any attorneys' fees and costs incurred by Barclays in bringing the Motion and the Objection.

Counsel for the Morgans emphasized that his clients support the Motion and want Barclays to foreclose on the Property but only if the Morgans are not personally liable for any attorneys' fees and costs incurred by Barclays in enforcing the First Lien Note and First Lien Deed of Trust. The Morgans' counsel also emphasized that his clients have no opposition to Barclays recovering its fees and expenses by adding these amounts to the balance due under the First Lien Note and then applying the sale proceeds from any foreclosure sale against the balance.

Based upon the pleadings filed and the closing arguments made by counsel, this Court must now resolve the following issues: (1) Whether the due on sale clause in the First Lien Deed

of Trust is enforceable with respect to the Morgans' conveyance of the Property to the Debtor?;
(2) Whether the Plan impermissibly modifies the rights of Wells Fargo, in its capacity as the
holder of the first lien on the Debtor's principal residence; (3) Whether, if the Plan does
improperly modify Wells Fargo's rights, does such proposed treatment constitute cause under §
362(d)(1) to lift the stay?; (4) Whether the post-petition recordation of the Assignments is a
violation of the automatic stay?; (5) Whether the Morgans are personally liable to Wells Fargo
for any attorneys' fees and costs incurred by Wells Fargo (through Barclays, its servicer) in
taking steps in this Chapter 13 case to enforce the terms of the First Lien Note and First Lien
Deed of Trust?; (6) Whether the Debtor is personally liable to Wells Fargo for any attorneys'
fees and costs incurred by Wells Fargo (through Barclays, its servicer) in taking steps in this
Chapter 13 case to enforce the terms of the First Lien Note and First Lien Deed of Trust?; and
(7) Whether Wells Fargo is entitled to recover its attorneys' fees and costs *in rem* even if the
Debtor and the Morgans are not personally liable?

## IV. CREDIBILITY OF WITNESSES

Two witnesses gave testimony: the Debtor and Morgan.  The Court finds that both of
these witnesses gave credible testimony, and this Court gives equal weight to the testimony that
each of them gave at the hearing.

## V. CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b)
and 157(a).  This contested matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),
(B), (G), (O) and the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark
Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes
a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only

in the context of a bankruptcy case."); *De Montaigu v. Ginther (In re Ginther Trusts)*, Adv. No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance"). Venue is proper pursuant to 28 U.S.C. § 1408(1).

**B.  The due on sale clause in the First Lien Deed of Trust is enforceable with respect to the Morgans' conveyance of the Property to the Debtor.**

1.  <u>Under Texas law, due on sale clauses are enforceable.</u>

In *Sonny Arnold*, the watershed case in Texas on enforceability of due on sale clauses, the Supreme Court of Texas held that a due on sale clause is valid and enforceable as long as it is not an undue restraint on alienation. *Sonny Arnold v. Sentry Savings Assoc.*, 633 S.W.2d 811 (Tex. 1982).[8] Specifically, in *Sonny Arnold*, the deed of trust read as follows:

> Transfers of the property or beneficial interests in borrower: Assumption. On Sale or transfer of (i) all or any part of the Property, or any interest therein, or (ii) beneficial interests in Borrower (Arnold) (if Borrower is not a natural person or persons but is a corporation, partnership, trust or legal entity), Lender (Sentry) may, at Lender's option, declare all of the sums secured by this Instrument to be immediately due and payable, and Lender may invoke any remedies permitted by paragraph 27 of this Instrument. This option shall not apply in case of (b) sales or transfers when the transferee's creditworthiness and management ability are satisfactory to Lender and the transferee has executed, prior to the sale or transfer, a written assumption agreement containing such terms as Lender may require, including, if required by Lender, an increase in the rate of interest payable under the Note.

*Id.* at 813.

---

[8]  *See also Howell v. Murray Mortg. Co.*, 890 S.W.2d 78, 87 (Tex. App.—Amarillo 1994, writ denied)(holding clause was not an undue restraint on alienation for the reasons set forth in *Sonny Arnold*); *Home Sav. of America, F.A. v. South Green Investors*, No. C14-90-01083, 1991 WL 63624, at *1 (Tex. App.—Houston [14th Dist.] 1991, no writ) (mem. op., not designated for publication) (recognizing that due on sale clauses are enforceable in Texas).

In order to determine if the due on sale clause was valid, the court first had to determine if the clause was a restraint on alienation; and then, the court had to determine if it was an unreasonable restraint. *Id.* The Restatement of Property defines a restraint on alienation as,

> (1) . . . an attempt by an otherwise effective conveyance or contract to cause a later conveyance (a) to be void [disabling restraint]; or (b) to impose contractual liability on the one who makes the later conveyance when such liability results form a breach of an agreement not to convey [promissory restraint]; or (c) to terminate or subject to termination all or party of the property interest conveyed [forfeiture restraint].

*Id.* at 814 (citing Restatement of Property § 404 (1944)).

In *Sonny Arnold,* the court focused on whether the restraint was a promissory restraint on alienation. *Id.* at 814. The court held that the "clause in this case does not attempt to cause a later conveyance to be void or terminate the property interest conveyed, it is neither a disabling restraint nor a forfeiture restraint." *Id.* The court also held that the "questioned clause in no manner precludes the owner-mortgagor from conveying his property," and, as such, the court did "not believe the clause before [it] constitute[d] the type of restraint on alienation prohibited by the Restatement of property." *Id.* Specifically, the court found that the clause did not "contain an agreement not to convey as required by the Restatement." *Id.* Therefore, the court in *Sonny Arnold* held that the due on sale clause was valid and enforceable because the clause itself was not an unreasonable restraint on alienation. *Id.* at 816.

Likewise, in *Casey v. Business Men's Assur. Co. of America*, 706 F.2d 559 (5th Cir. 1983), the Fifth Circuit affirmed the district court's holding that due on sale clauses are enforceable when it held that "neither the due-on-sale clause itself, nor the manner in which it was applied by the defendant in this case, constitute[d] an unreasonable restraint on alienation under Texas law." *Id.* at 561 The *Casey* court cited to *Sonny Arnold*, which viewed the due on sale clause as not precluding conveyance by the borrower of its property but instead as, giving

the lender an optional acceleration right if the property is conveyed.  *Id.* (citing *Sonny Arnold*, 633 S.W.2d at 811.)  Moreover, "[i]t is a basic contract principle that the parties have a right to contract with regard to their property as they deem appropriate, so long as the contract does not offend public policy and is not illegal." *Parker Plaza W. Partners v. UNUM Pension & Ins. Co.,* 941 F.2d 349, 352 (5th Cir. 1991) (citing *Sonny Arnold,* 633 S.W.2d at 815).

2.      The due on sale clause in the case at bar is enforceable because it is not an undue restraint on alienation.

The due on sale clause in the First Lien Deed of Trust reads as follows:

> Transfer of the Property or a Beneficial Interest in the Borrower.  If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and an beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

[Finding of Fact No. 3].  The due on sale clause in *Sonny Arnold* sets forth that the lender has the option of accelerating the balance if the borrower sold the collateral without first obtaining the lender's consent, but the *Sonny Arnold* clause did not expressly preclude the mortgagor from conveying his property. *Sonny Arnold*, 633 S.W.2d at 814.  Similarly, the clause in the First Lien Deed of Trust provides an option for the lender to accelerate, if the mortgagor does not obtain prior written consent; but, like the clause in *Sonny Arnold*, the clause does not preclude the Morgans from conveying the Property. Case law reflects that there must be more than just the requirement of lender's preapproval of the sale in order to constitute an unreasonable restraint on alienation, such as the lender coercing a transfer fee or the lender charging the mortgagor a prepayment penalty.[9]   It may well be that the Debtor in the case at bar, or any debtor in any

---

[9]      There are at least two cases which have held that due on sale clauses are unenforceable.  These cases acknowledge that *Sonny Arnold* is the governing case, but have distinguished the facts to conclude that the due on sale clauses are unenforceable.  The court in *Nabours* concluded the clause was an unreasonable restraint on alienation because it contained an agreement not to convey and "a penalty for breach of that agreement";

other bankruptcy case, believes that having to obtain prior consent constitutes an unreasonable restraint on alienation. But, that is not what the Texas Supreme Court held in *Sonny Arnold*; and the Texas Supreme Court's ruling is the law that this Court must enforce.[10] As such, the due on sale clause in the case at bar is valid because even though Wells Fargo has the option to accelerate without prior written consent from the mortgagor, the clause does not result in a coerced transfer fee or a prepayment penalty charged to the mortgagor. Stated differently, to the extent that the due on sale clause in the First Lien Deed of Trust is a restraint on alienation, it is not an *unreasonable* restraint.

## C. The Debtor's Plan may not impermissibly modify the rights of Wells Fargo.

1.    There is a split of authority on whether a Chapter 13 plan may modify the rights of a home lender who is attempting to invoke its rights and remedies under a due on sale clause.

A split of authority exists as to whether a debtor who is not the original mortgagor and who acquired property in violation of a due on sale clause may nevertheless use a Chapter 13 plan to prevent a lender form invoking its right under the due on sale clause. *In re Tewell*, 355 B.R. 674, 680 (Bankr. E.D. Ill. 2006). "One line of cases has held that treatment of the mortgage in the plan would be an impermissible modification of the objecting mortgage holder's rights in violation of 11 U.S.C. § 1322(b)(2)." *Id.* "The other line of cases allows a debtor to include the

---

specifically, the price for consent of the mortgagee would be such that the mortgagee would be free to raise the interest rate, shorten the time for re-payment of the principal owed, or rewrite any of the provisions of the deed of trust. *Metropolitan Sav. & Loan Ass'n v. Nabours*, 652 S.W.2d 820, 822 (Tex. App.—Tyler 1983, writ dism'd). Similarly, in *North Point* the mortgagee *"coerced a fee of 5% of the unpaid balance*, arbitrarily, and without any provision in the original agreement providing for such fee." *North Point Patio Offices Venture v. United Benefit Life Ins. Co.*, 672 S.W.2d 35 (Tex. App. Houston [14th Dist.]—1984, writ ref'd n.r.e.)(emphasis added). The court held the clause was "an arbitrary, overbroad, and unreasonable restraint on the alienation of property." *Id.* In the case at bar, the due on sale clause in the First Lien Deed of Trust contains no imposition of a penalty or fee. Therefore, *Nabours* and *North Point* are readily distinguishable from this case.

[10] "In deciding cases governed by state law, we are bound by applicable decisions of the state's highest court." *Cochran v. B J Servs. Co.*, 302 F.3d 499, 501—502, (5th Cir. La. 2002). *See also, White v. Epps*, 2009 U.S. Dist. LEXIS 126465, at *23-24 (S.D. Miss. Oct. 8, 2009) ( "The views of the state's highest court with respect to state law are binding on the federal courts.")

mortgage in the plan based on a broad interpretation of the term 'claim' even though the debtor is not in privity with the mortgagee." *Id.*

> 2. The Plan may not modify Wells Fargo's right to invoke and enforce the due on sale clause in the First Lien Deed of Trust.

In the case at bar, this Court concludes that the treatment of the mortgage in the Plan would be an impermissible modification of Wells Fargo's right to enforce the due on sale clause pursuant to the First Lien Deed of Trust.  Section 1322(b)(2) provides as follows:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
> (2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2). (emphasis added)

In the case at bar, the Debtor has set forth in Schedule C that the Property is his homestead, and the Debtor resides on the Property [Finding of Fact No. 18]; therefore, the Property is the Debtor's principal residence. There is no question that Wells Fargo holds a lien on the Property and that Wells Fargo has no other collateral securing the First Lien Note. Therefore, § 1322(b)(2) applies in the case at bar.

"Pursuant to § 1322(b)(2), a debtor may not modify the rights of a secured creditor who has an interest in real property securing the debtor's principal residence." *In re Tewell*, 355 B.R. 681. In *Nobelman*, the United States Supreme Court has stated that the "rights" referred to in § 1322(b)(2) are those "reflected in the relevant mortgage instruments, which are enforceable under [state law]." *Id.* (citing *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 329 (1993)).  Due on sale clauses are valid and enforceable in Texas. *Sonny Arnold*, 633 S.W.2d at 811. "To allow debtors to effectively ignore due on sale clauses invoked by holders of home mortgages stretches the language of § 1322(b)(2) past the breaking point." *In re Tewell*, 355 B.R. at 681.

The Code does allow that—notwithstanding § 1322(b)(2)—a plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5). The Seventh Circuit has stated that "cure" "refers to . . . the restoration of the way things were before the default." *In re Tewell*, 355 B.R. at 681 (citing *In re Clark*, 738 F.2d 869, 872 (7th Cir. 1984)). The plain meaning of this language is that full title in the Property would be reinstated in the Morgans.

*Johnson* held that a broad interpretation of the term "claim" under 11 U.S.C § 101(5) indicates that "debtors could cure defaulted mortgages within a Chapter 13 plan even though no privity of contract exist[ed] between the debtors and creditors." *In re Tewell*, 355 B.R. at 681 (citing *Johnson v. Home State Bank*, 501 U.S. 78 (1991)). The court in *Johnson* also concluded that "a debtor could include a non-recourse claim in a Chapter 13 plan, even when the debtor is not personally liable for the underlying debt." *Id.*[11] Thus, it is the case here, as in *Johnson*, that Wells Fargo's claim is *in rem* as to the Property, not *in personam* with recourse against Mullin. However, the fact that such "rights are 'claims' as defined in § 101(5) . . . does not override or nullify the prohibition on modification contained in § 1322(b)(2)." *Id.*

For example, the Chapter 13 debtor in *Tewell* obtained a "residential mortgage property from original mortgagor without adhering to due on sale clause in mortgage [and] could not 'cure' mortgage defaults through Chapter 13 plan over objection of mortgage holder."[12] *In re*

---

[11] The debtor in *Johnson* was the original obligor who had been discharged in a Chapter 7 case, and the bank was subsequently held to have a valid claim under his Chapter 13 plan. *Johnson v. Home State Bank*, 501 U.S. at 78. Unlike the debtor in *Johnson*, the Debtor here is *not* the original obligor on the First Lien Deed of Trust.

[12] Other courts have concurred with the holding in *Tewell*. For example, the court in *Allen* held that: (1) debtor who acquired . . . deed of trust property . . . in violation of due-on-transfer clause . . . . could not cure and reinstate deed-of-trust in her Chapter 13 case, while continuing to retain ownership in violation of this due-on-transfer clause; [and the] (2) automatic stay would be annulled, in order to validate deed of trust foreclosure sale that conducted to third party purchaser in ignorance of mother's rights . . .

*Tewell*, 355 B.R. at 674. Specifically, the debtor in *Tewell* did not obtain the written consent of the creditor prior to the transfer of property. *Id.* at 677. The debtor sought to "cure the mortgage default and maintain current payments during the pendency of the case" while the creditor sought relief from the automatic stay. *Id.* The Bankruptcy Code is silent on due on sale clauses. *Id.* at 679. *Tewell* notes that the Illinois Supreme Court has "expressly held that due-on-sale provisions are valid per se." *Id.* at 680. Likewise, the Texas Supreme Court has ruled that due on sale clauses are valid and enforceable. *Sonny Arnold*, 633 S.W.2d at 811.

The Debtor, in the case at bar, obtained title to the Property through execution of a warranty deed by the original mortgagors, the Morgans, in violation of the due on sale clause in the First Lien Note. [Finding of Fact No. 9]. This Court is persuaded by the line of cases holding "that a debtor who obtained residential property from the mortgagor without adhering to the due on sale clause is not permitted to cure the mortgage defaults through the Chapter 13 plan over the objection of the mortgage holder." *In re Tewell*, 355 B.R. at 682. Here, the Debtor seeks to do exactly that under the Plan. Wells Fargo has objected to the Plan and argues that it impermissibly modifies Wells Fargo's rights in violation of §1322(b)(2). This Court agrees. The Plan allows the Debtor to keep the Property and also keeps the automatic stay in place to prevent Wells Fargo from foreclosing on the Property; meanwhile, the Debtor is supposed to make payments to the Morgans pursuant to the terms of the Second Lien Note, and the Morgans would presumably then turn around and remit payment to Wells Fargo under the First Lien Note.

---

*In re Allen*, 300 B.R. 105 (Bankr. D.D.C. 2003).

Additionally, *Martin*, a Connecticut case, held that the "debtor . . . neither alleged nor show[ed] that a due on sale clause is not enforceable in Connecticut. The debtor's plan, therefore, impermissibly seeks to modify the Bank's rights in violation of § 1322(b)(2)" when the original owner quit-claimed the property to the debtor in violation of the due on sale clause. *In re Martin*, 176 B.R 675, 677 (Bankr. D. Conn. 1995).

Moreover, in *Threats*, the court held that the transferee impermissibly modified the rights of the creditor under § 1322(b)(2) by violating the assumption and due on sale clause and therefore could not cure through the Bankruptcy plan absent a showing that both the "assumption and due on sale clauses would be unenforceable in Illinois." *In re Threats*, 159 B.R. 241, 243 (Bankr. N.D. Ill. 1993).

Under these circumstances, "the rights of the bank are destroyed if the court allows the [D]ebtor's plan to force a new owner on the mortgagee in continued violation of the due on sale clause." *In re Allen*, 300 B.R. at 105. This Court will not force a new owner (i.e. Mullin) on Wells Fargo. To do so would disregard Texas law that due on sale clauses are enforceable. For all of these reasons, the Court concludes that the Plan impermissibly modifies the rights that Wells Fargo has under the First Lien Note and First Lien Deed of Trust.

> 3.   Cases holding that a Chapter 13 plan may modify the rights of a home lender seeking to invoke its rights and remedies under a due on sale clause.

Given the importance of due on sale clauses, the Court believes that it is appropriate to distinguish those bankruptcy court opinions which it has found have allowed Chapter 13 plans to modify the rights of a home lender where the debtor has not been in privity with the home lender.

> i.   *Cases where the facts are distinguishable from the case at bar.*

*Garcia* is the leading case holding that "the default arising from the due on sale clause can be cured without impermissibly modifying the Bank's lien rights." *In re Garcia*, 276 B.R. 627, 628 (Bankr. D. Ariz. 2002). However, *Garcia*, which has very similar facts to the current case, is distinguishable because in Arizona due on sale clauses are "invalid," *Id.* at 642-43, whereas due on sale clauses are valid in Texas. *Sonny Arnold*, 633 S.W.2d at 811. Other cases, however, are distinguishable on other facts. *See In re Flores*, 345 B.R. 615, 617 (Bankr. N.D. Ill. 2006) (holding wife who was not the original signor could include property in plan because it was community property); *In re Currington*, 300 B.R. 78 (Bankr. M.D. Fla. 2003)(holding debtor could include property because the bank accepted payments directly from the debtor and had previously allowed the debtor to cure default); *In re Trap*, 260 B.R. 267, 268 (Bankr. D.S.C. 2001) (holding debtor could cure default partly because the bank held a recourse loan and

therefore could recover against the original borrower, personally); *In re Mendoza,* 2010 Bankr. LEXIS 1308 (Bankr. N.D. Cal. 2010)(original debtor placed a junior encumbrance on property and did not attempt to sell to third party); and *In re Allston,* 206 B.R. 297, 299 (Bankr. E.D.N.Y. 1997) (holding debtor could cure after the debtor had previously made payments to the bank).

ii.      *Case where the facts are not distinguishable from the case at bar.*

*In re Rutledge,* a New York case, contains similar facts to the current case, in that the original mortgagor made a pre-petition transfer to the debtor without obtaining the consent of the lender. *In re Rutledge,* 208 B.R. 624, 625 (Bankr. E.D.N.Y. 1997). Due on sale clauses in New York have generally been held to be "valid and enforceable (38 N.Y.Jur. Mortgages, § 75, p. 132)." *Iris v. Marine Midland Bank of Southeastern New York, N. A.,* 450 N.Y.S.2d 997, 998 (N.Y.Sup., 1982). Yet, the court in *Rutledge,* without specific explanation for its reasoning, held that the debtor's plan could modify § 1322(b)(2) and the creditor had not demonstrated sufficient cause for the stay to be lifted under § 362(d).

This Court strongly disagrees with the holding in *Rutledge.* In Texas, as in New York, due on sale clauses are enforceable. This fact, plus the express language of § 1322(b)(2), convinces this Court that the Debtor's Plan impermissibly modifies the rights that Wells Fargo has under the First Lien Note and the First Lien Deed of Trust.

**D. Modification of Wells Fargo's rights through the Plan constitutes cause under § 362(d)(1) to lift the stay because the modification is an impermissible violation of the Wells Fargo's rights under § 1322(b).**

Cause under § 362(d)(1) is defined on a case-by-case basis. *In re Tewell,* 355 B.R. at 679 (citing *In re Fernstrom Storage & Van Co.,* 938 F.2d 731, 735 (7th Cir. 1991)). In the case at bar, the due on sale clause is enforceable; therefore, cause exists if the Plan sufficiently undermines Wells Fargo's ability to enforce the due on sale clause such that the terms of the First Lien Note and First Lien Deed of Trust are impermissibly modified under § 1322(b). Here,

the automatic stay remains in place during the 60-month duration of the Plan while the Debtor makes monthly payments to the Chapter 13 trustee, who is then supposed to remit payments to the Morgans, who presumably would remit payments to Wells Fargo.[13]   Thus, the Plan, if confirmed, would prevent Wells Fargo from foreclosing on the Property.  Indeed, the automatic stay would be in effect even though Wells Fargo, pursuant to the due on sale clause and other provisions in the First Lien Note and the First Lien Deed of Trust, would otherwise have the immediate right to accelerate the balance and foreclose on the Property.[14]   Under these circumstances, the Court concludes that cause exists under § 362 (d)(1) to lift the stay so that Wells Fargo may exercise its rights and remedies under the First Lien Note, the First Lien Deed of Trust, and applicable law.

This Court's holding accords with the holding in *Tewell*.  There, the creditor was found to have met its burden of showing that cause existed under § 362(d)(1) to allow the creditor to proceed with the foreclosure action because the mortgager conveyed his interest in the property to the debtor in violation of the due on sale clause.  *In re Tewell*, 355 B.R. at 683.  Accordingly, Barclays, as servicer for Wells Fargo, may proceed to foreclose on the Property.

**E.  Recording the Assignments post petition does not violate the stay.**

Debtor's counsel argues that because the Assignments were recorded post-petition, Wells Fargo violated the stay, and, therefore, the Court should not lift the stay as a matter of equity.

---

[13] There is no question that the automatic stay remains in place during the entire Chapter 13 case even though the Plan does not expressly so state. This is so for the following reason.  Section 14 of the Plan states that "Property of the estate shall vest in the debtors upon entry of the discharge order."  The discharge order will not be entered until the Debtor has made all of his payments under the Plan—which could not occur until 2015.  Hence, the Debtor's Chapter 13 estate will remain in existence until 2015; and, because the estate remains in existence, the automatic stay remains in effect. *In re Schewe*, 94 B.R. 938, 942 (Bankr. W.D. Mich. 1989).

[14] In fact, Wells Fargo has already accelerated the balance owed under the First Lien Note. [Finding of Fact No. 19]. It is only to pursue the foreclosure process on the Property for which Wells Fargo now seeks to lift the automatic stay.  And, because the Property is property of the Debtor's Chapter 13 estate by virtue of the deed that the Morgans delivered to the Debtor on August 20, 2009, [Finding of Fact No. 9], there is no question that the stay must be lifted for Wells Fargo to be able to foreclose.

However, the post-petition recordation of the assignment is not a violation of the automatic stay. *In re Cook* held that the bank "was not required to record its interest in the promissory note and the mortgage because, according to the bankruptcy court, the recording of the original mortgage . . . was 'constructive notice that a mortgage lien existed against the Cooks' real property.'" *In re Cook*, 457 F.3d 561, 567 (6th Cir. 2006). The *Cook* court relied on the reasoning of the Eleventh Circuit that held, "the owner of a mortgage interest may transfer its interest after the mortgagor files for bankruptcy." *Id.* (citing *Kapila v. Atlantic Mortgage & Investment Corp. (In re Halabi)*, 184 F.3d 1335, 1337 (11th Cir. 1999))(holding "the assignment of the mortgage, once the original grant by the mortgagor to the mortgagee has been perfected, does not involve a "transfer of the property of the debtor").    Further, *Cook* held that the bank did not violate the automatic stay when it, as assignee, recorded the assignment of the mortgage interest after the mortgagors filed their bankruptcy petition. *In re Cook*, 457 F.3d at 567.

Likewise, *In re Canellas* held that an "assignment of the note and mortgage to the movant does not affect perfection or constitute a transfer of property of the estate to the debtor." *In re Canellas*, No. 6:09-bk-122240, 2010 WL 571808, *4 (Bankr. M.D. Fla. Feb. 9, 2010) (citing *In re Halabi*, 184 F.3d at 1339). The court in *Canellas*, following the holding of *Cook* and *Halabi*, emphasized that the "recordation of an assignment post-petition does not constitute a violation of the automatic stay." *Id.* (citing *In re Halabi*, 184 F.3d at 1338). Therefore, like *Cook* and *Canellas*, the post petition recordation of the Assignments did not violate the automatic stay because the original First Lien Deed of Trust was recorded more than five years prior to the filing of Mullin's Chapter 13 petition. [Finding of Fact No. 2].

**F.    The Morgans are not personally liable to Wells Fargo for any attorneys' fees and costs incurred in the prosecution of the Motion and Objection.**

Counsel for the Morgans argued that if the Court lifts the stay, the Morgans should not be personally liable to Wells Fargo for the attorneys' fees and costs incurred in the prosecution of the Motion and the Objection.  He emphasized that the Morgans are not personally liable to Wells Fargo because the First Lien Deed of Trust is a Texas Home Equity Security Instrument.  [Finding of Fact No. 3].  According to the Texas Constitution § 50(a)(6), home equity loans "must be without recourse for personal liability against you and your spouse unless you or your spouse obtained this extension of credit by actual fraud."  No indication exists either in the record or in the First Lien Deed of Trust that the loan was obtained by fraud.  In addition, the First Lien Note states in section (E) that the

> Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law including Section 50(a)(6), Article XVI of the Texas Constitution.  Those expenses include, for example reasonable attorneys' fees . . . the Note Holder can enforce its rights under this Note soley against the property described above and not personally against any owner of such property or the spouse of an owner.

The plain meaning of the First Lien Note indicates that Wells Fargo may only recover its attorneys' fees and costs against the Property.  Therefore, the Morgans are not personally liable to Wells Fargo for default under the First Lien Note because this note is considered a non-recourse equity instrument under the Texas Constitution.

**G.    The Debtor is also not personally liable to Wells Fargo for any attorneys' fees and costs incurred in prosecuting the Motion and Objection.**

The Debtor never executed a promissory note for the benefit of Wells Fargo.  Rather, the Debtor executed and delivered to the Morgans the Second Lien Note. [Finding of Fact No. 10].  "The purchaser of mortgaged realty 'subject to all and any indebtedness' then due and owing on the realty [does] not become personally liable for any part of the mortgage debt."  *Homeland*

*Realty Co. v. Wheelock*, 119 S.W.2d 167 (Tex. Civ. App. 1938); *see also City of Dallas v. Pfirman Corp.*, No. Civ.A. 399CV0312G, 2000 WL 159314, *2 (N.D. Tex. 2000) ("assuming the debt against the property takes title 'subject to' such matters . . . the property remains encumbered by the 'lien', and the purchaser's title is subject to such encumbrance, the purchaser is not personally liable for the payment of the lien unless he expressly assumes the same"); and *see Booth Fisheries Corp. v. Eardley*, 233 S.W.2d 872 (Tex. Civ. App.---El Paso 1950, writ ref'd n.r.e.) (stating in dicta that a recitation in a deed where the conveyance is made subject to a debt or debts ordinarily means the grantee does not become personally liable for the debts). Thus, Mullin purchased the Property subject to the rights that Wells Fargo has under the First Lien Note. But, because Mullin is not a party to the First Lien Note, he is not personally liable to Wells Fargo for attorneys' fees and costs incurred for the prosecution of the Motion and the Objection.

**H.    Wells Fargo is entitled to recover its reasonable attorneys' fees and costs out of funds received through foreclosure, even though neither the Morgans nor Mullin are personally liable for the fees and costs.**

This Court has ruled that individually Morgan and Mullin are not personally liable for any attorneys' fees and costs incurred by Wells Fargo for prosecuting the Motion and Objection. However, the issue remains as to whether Wells Fargo may recover its attorneys' fees by adding them to the balance of the debt owed under the First Lien Note and thereafter recovering this sum through a foreclosure sale. The Court believes that it may.

The Court arrives at this conclusion because the First Lien Note contains a clause 7(E) that states as follows:

> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing the Note to the extent not prohibited by applicable law including § 50(a)(6), Article XVI of the Texas Constitution. Those expenses include, for example, *reasonable attorneys' fees*. I understand that these expenses

are not contemplated to be incurred with maintaining or servicing this Extension of Credit. (emphasis added)

In addition, the First Lien Deed of Trust states:

> If there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy . . . then Lender may do and pay whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument . . . *Lender's actions can include . . . paying reasonable attorneys' fees to protect its interest in the Property and /or rights under this Security Instrument, including its secured position in a bankruptcy proceeding . . . Any amounts disbursed by the Lender under this Section 9 shall become additional debt* of Borrower secured by this Security Instrument. (emphasis added)

This language leaves no doubt that Wells Fargo is entitled to recover its attorneys' fees and costs so long as doing so does not violate § 50(a)(6) of the Texas Constitution. Article XVI § 50(a)(6)(C) provides that there will be no personal liability. However, it does not bar recovery of fees and expenses by selling the collateral in a foreclosure sale. Thus, even though Wells Fargo may not seek to recover its attorneys' fees and costs from the Morgans or the Debtor in their individual capacities, Wells Fargo may nevertheless add the fees and costs to the balance owed under the First Lien Note, and then recover the entire balance through foreclosure on the Property.

## VI. CONCLUSION

In sum, this Court holds that the recording of the post-petition Assignments does not violate the automatic stay in effect during the Debtor's Chapter 13 case.  Further, because the Morgans' loan with Wells Fargo is a home equity loan, based on the Texas Constitution, the Morgans are not personally liable to Wells Fargo.  In addition, because the Debtor purchased the Property subject to the First Lien Deed of Trust and is not in privity of contract with Wells Fargo, the Debtor is also not personally liable for the mortgage. Nevertheless, the due on sale clause contained in the First Lien Deed of Trust is valid and enforceable under Texas law. And,

because the due on sale clause is valid and enforceable, the Debtor is prohibited from using the Plan as a vehicle to thwart Wells Fargo's rights under the First Lien Note and First Lien Deed of Trust to foreclose its lien on the Property.  The Plan, as proposed, does exactly that and, therefore, impermissibly violates the rights of Wells Fargo under § 1322(b)(2).  And, because the Plan violates Wells Fargo's rights under § 1322(b)(2), cause exists under § 362(d)(1) for this Court to lift the automatic stay so that Wells Fargo may proceed to exercise its rights and remedies under the First Lien Note and First Lien Deed of Trust, including, but not limited to, the right to foreclose on the Property. Finally, in foreclosing on the Property, Wells Fargo is entitled to apply the proceeds from the sale of the Property against not only principal and accrued, unpaid interest, but also against the attorneys' fees and costs that it has incurred; however, Wells Fargo may not seek to recover from the Morgans or the Debtor, in their individual capacities.

An order consistent with this Memorandum Opinion has already been entered on the docket. [Doc. No. 65].

Signed on this 2nd day of July, 2010.

Jeff Bohm
United States Bankruptcy Judge